**UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE HARMAN INTERNATIONAL INDUSTRIES, INC. SECURITIES LITIGATION | Case No. 07-cv-1757-RC |

**MEMORANDUM IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) PRELIMINARY CERTIFICATION OF A SETTLEMENT CLASS; (III) APPROVAL OF FORM AND MANNER OF NOTICE; AND (IV) SETTING OF DATE FOR FINAL APPROVAL HEARING**

# TABLE OF CONTENTS

I.      Preliminary Statement.................................................................................................. 1

II.     Background of the Litigation ........................................................................................ 3

III.    Settlement Negotiations ............................................................................................... 7

IV.     Argument ..................................................................................................................... 7

    1.      The Proposed Settlement Warrants Preliminary Approval...................................... 7

        A.      The Proposed Settlement Is the Result of Non-Collusive, Arms'-Length Negotiations and Is Entitled to a Presumption of Fairness, Reasonableness, and Adequacy ................................................................ 9

        B.      There Are No Grounds to Doubt the Fairness of the Settlement and the Settlement Has No Obvious Deficiencies, Such As Unduly Preferential Treatment of Class Representatives or Excessive Compensation for Attorneys ..................................................................... 10

        C.      The Proposed Settlement Is Within the Range of Possible Approval ........................................................................................... 11

    2.      The Form and Manner of Notice to the Class Should Be Approved ..................... 12

V.      The Court Should Preliminarily Certify the Class for Settlement Purposes..................... 15

    1.      The Settlement Class Meets All the Requirements of Rule 23(a) ......................... 15

    2.      The Requirements of Rule 23(b)(3) Are Satisfied .............................................. 16

VI.     Proposed Schedule of Events ...................................................................................... 19

VII.    Conclusion ................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Alstom SA Sec. Litig.*,
    253 F.R.D. 266 (S.D.N.Y. 2008) ...........................................................................16

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)...........................................................................15, 16, 17

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
    133 S. Ct. 1184 (2013)...........................................................................17

*In re APA Assessment Fee Litig.*,
    311 F.R.D. 8 (D.D.C. 2015)...........................................................................15

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)...........................................................................17

*Bebchick v. Washington Metro Area Transit Comm'n*,
    805 F.2d 396 (D.C. Cir. 1986)...........................................................................13

*In re Black Farmers Discrimination Litig.*,
    856 F. Supp. 2d 1 (D.D.C. 2011), *as amended* (Nov. 10, 2011) ............................................15

*Cammer v. Bloom*,
    711 F. Supp. 1264 (D.N.J. 1989) ...........................................................................17, 18

*Danieli v. IBM Corp.*,
    No. 08 CV 3688(SHS), 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ...............................11

*Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ...........................................................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    134 S. Ct. 2398 (2014)...........................................................................17

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)...........................................................................16

*In re Newbridge Networks Sec. Litig.*,
    No. CIV. A. 94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 23, 1998)...............................12

*Radosti v. Envision EMI, LLC*,
    717 F. Supp. 2d 37 (D.D.C. 2010) ...........................................................................15

*Swedish Hospital Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993) ............................................................13

*Thomas v. Christopher*,
  169 F.R.D. 224 (D.D.C. 1996) ............................................................8

*Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998) ................................8, 10

*Trombley v. Nat'l City Bank*,
  759 F. Supp. 2d 20 (D.D.C. 2011) ....................................................9, 10

*Trombley v. Nat'l City Bank*,
  826 F. Supp. 2d 179 (D.D.C. 2011) ....................................................13

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
  283 F.R.D. 199 (S.D.N.Y. 2012) ........................................................16

*UFCW Local 1776 v. Eli Lilly and Co.*,
  620 F.3d 121 (2d Cir. 2010) ..............................................................17

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ..............................................................16

*Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*,
  266 F. Supp. 2d 44 (D.D.C. 2003) ......................................................8

*In re Vitamins Antitrust Litig.*,
  305 F. Supp. 2d 100 (D.D.C. 2004) ......................................................9

*In re Vitamins Antitrust Litig.*,
  No. 99–197(TFH), 1999 WL 1335318 (D.D.C. Nov. 23, 1999) ..................9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005).............................................................7, 15

**STATUTES**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4............................3, 11, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ............................................................................. *passim*

Lead Plaintiff Arkansas Public Employees Retirement System ("APERS" or "Lead Plaintiff")[1] respectfully submits this memorandum of law in support of Lead Plaintiff's unopposed motion for: (i) preliminary approval of the Stipulation of Settlement dated April 19, 2017 (the "Stipulation"), proposing to settle all claims in this Action; (ii) preliminary certification of a Settlement Class; (iii) approval of the form and manner of notice to Settlement Class Members; and (iv) the scheduling of a hearing (the "Final Approval Hearing") on final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Lead Counsel's Litigation Expenses. Subject to the Court's availability, Lead Plaintiff respectfully requests that the Court schedule the Final Approval Hearing for a date during the first two weeks of August 2017.

## I.     PRELIMINARY STATEMENT

After nearly a decade of litigation, including the complete dismissal of the case; a successful partial appeal to the D.C. Circuit by Lead Plaintiff; an unsuccessful petition for *certiorari* to the Supreme Court by Defendants; remand to this Court; extensive fact and class-certification discovery, including five depositions and the production and review of more than 130,000 pages of documents; and Lead Plaintiff's heavily contested motion for class certification, Lead Plaintiff and Defendants Harman International Industries, Inc. ("Harman"), the Estate of Dr. Sidney Harman ("Dr. Harman"), Dinesh Paliwal ("Paliwal"), and Kevin Brown ("Brown")[2] participated in an arms'-length mediation presided over by the Honorable Daniel Weinstein (Ret.) and have reached a $28,250,000 all-cash Settlement. If approved, the

---

[1] Capitalized terms not defined herein are as defined in the Stipulation of Settlement, dated April 19, 2017 ("Stipulation").

[2] Dr. Harman, Paliwal, and Brown are collectively referred to as the "Individual Defendants" and the Individual Defendants and Harman are collectively referred to as "Defendants."

Settlement will resolve all claims asserted in this Action.

Lead Plaintiff and Lead Counsel, based upon extensive discovery and evaluation of the facts and applicable law in this case and their recognition of the substantial risk and expense of continued litigation, submit that the proposed Settlement is in the best interests of the Class and provides a meaningful and timely recovery for the Class. Accordingly, Lead Plaintiff respectfully moves for the certification of the Class for the purposes of the Settlement, approval of the form and manner of distribution of notice to the Class, and scheduling of a Final Approval Hearing.

Specifically, Lead Plaintiff requests that the Court enter the proposed Preliminary Approval Order (the "Preliminary Approval Order"), attached as Exhibit A to the Stipulation, which, *inter alia*, will:

(i)     preliminarily approve the Settlement, including all provisions therein;

(ii)     approve the form and content of the Notice of Pendency of Class Action and Proposed Settlement ("Notice") and Summary Notice of Pendency of Class Action and Proposed Settlement ("Summary Notice"), attached as Exhibits A-1 and A-2 to the Stipulation, respectively;

(iii)     approve the form and content of the Proof of Claim Form, attached as Exhibit A-3 to the Stipulation;

(iv)     preliminarily certify, for the purposes of the Settlement, a Class of all persons or entities who purchased or acquired Harman common stock between April 26, 2007 and February 5, 2008, both dates inclusive;

(v)     preliminarily appoint, for the purposes of the Settlement, Lead Plaintiff as class representative for the Class and Lead Counsel as counsel for the Class;

(vi)     find that the procedures established for distribution of the Notice and publication

of the Summary Notice in the manner and form set forth in the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and

(vii)    schedule the Final Approval Hearing and establish a schedule and procedures for: disseminating the Notice and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement; considering Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## II.    BACKGROUND OF THE LITIGATION

This Action began on October 1, 2007, when Plaintiff Cheolan Kim ("Kim") filed a class action complaint, 1:07-cv-1757-RWR, in the United States District Court for the District of Columbia (the "Court") against Harman, Dr. Harman,[3] Brown, and Sandra Robinson. The Action was filed on behalf of a class comprised of purchasers of Harman common stock between April 26, 2007 and September 24, 2007, inclusive, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. § 240.10b-5. The case was assigned to the Honorable Richard W. Roberts.

On January 16, 2008, Kim filed a First Amended Class Action Complaint against Defendants asserting the same claims as in the initial complaint, but extending the Class Period from April 26, 2007 through September 24, 2007, both dates inclusive, to April 26, 2007 through

---

[3] Dr. Harman passed away on April 12, 2011. His estate was added as a Defendant when Lead Plaintiff filed its Amended Consolidated Class Action Complaint on October 16, 2015.

January 11, 2008, both dates inclusive.

On February 15, 2008, the Court appointed Arkansas Public Employees Retirement System as Lead Plaintiff and the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Lead Counsel.

On May 2, 2008, Lead Plaintiff filed a Consolidated Class Action Complaint ("Consolidated Complaint") against Defendants asserting claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of purchasers of Harman common stock between April 26, 2007 and February 5, 2008, inclusive.

On July 3, 2008, Defendants moved to dismiss the Consolidated Complaint. Lead Plaintiff filed an opposition to Defendants' motion on September 2, 2008, and Defendants filed a reply in support of their motion on October 2, 2008.

On April 12, 2012, this Action was reassigned to the Honorable Rudolph Contreras.

On September 5, 2012, the Court held oral argument on Defendants' motion to dismiss the Consolidated Complaint. At the conclusion of argument, the Court requested that Lead Plaintiff and Defendants submit supplemental briefs regarding the chronology of certain events in this Action. Lead Plaintiff and Defendants filed their respective supplemental briefs on September 24, 2012.

On October 1, 2013, the Court issued an order permitting the parties to file supplemental briefing in further support of the arguments asserted in their briefing on the motion to dismiss.

On October 18, 2013, Lead Plaintiff and Defendants filed supplemental briefs in further support of the arguments raised in their briefing on the motion to dismiss, and on October 25, 2013, the parties filed responses to each other's supplemental briefs.

On January 17, 2014, the Court granted Defendants' motion to dismiss.

On February 18, 2014, Lead Plaintiff filed a limited appeal to the Court of Appeals for the D.C. Circuit ("Circuit Court") focusing on three alleged misstatements that were dismissed as a result of the Court's January 17, 2014 order granting Defendants' motion to dismiss. Lead Plaintiff filed its opening brief on appeal on June 10, 2014. Defendants filed their response on August 11, 2014, and Lead Plaintiff filed a reply on September 8, 2014. The Circuit Court held oral argument on February 10, 2015.

On June 23, 2015, the Circuit Court issued its ruling on Lead Plaintiff's appeal, reversing the dismissal of the three alleged misstatements.

On October 6, 2015, the parties entered into a scheduling order providing dates for the filing of the Complaint, the exchange of initial disclosures, the filing of a motion for class certification, and the taking of discovery.

On October 16, 2015, Lead Plaintiff filed an Amended Consolidated Class Action Complaint (the "Complaint") against Defendants asserting the same claims on behalf of the same purchasers as those in the Consolidated Complaint. The factual allegations in the Complaint were limited to Defendants' three alleged misstatements regarding the Company's Personal Navigation Device ("PND") business.

On November 24, 2015, Defendants petitioned the Supreme Court of the United States ("Supreme Court") for a writ of *certiorari*. Following full briefing, the Supreme Court denied Defendants' petition on February 29, 2016. Also on November 24, 2015, Defendants Harman, Paliwal, and Brown filed a motion to stay the proceedings in the District Court until after the Supreme Court ruled on Defendants' petition for a writ of *certiorari*. Lead Plaintiff filed an opposition to Defendants Harman, Paliwal, and Brown's motion to stay on December 1, 2015. The Court denied the motion to stay on December 15, 2015.

On November 25, 2015, while the motion to stay was still pending, Defendants Harman, Paliwal, and Brown answered the Complaint, denying all allegations of wrongdoing and liability alleged therein.  The Estate of Dr. Harman did not file an answer on November 25, 2015 because it had not yet been served as a defendant in this Action.

On February 1, 2016, the Estate of Dr. Harman waived service of a summons.

On February 29, 2016, following full briefing, the Supreme Court denied Defendants' petition for a writ of *certiorari*.

On March 29, 2016, the Estate of Dr. Harman answered the Complaint, denying all allegations of wrongdoing and liability alleged therein.

On April 1, 2016, Lead Plaintiff filed its motion for class certification. Defendants opposed Lead Plaintiff's motion on June 27, 2016, and Lead Plaintiff filed a reply in support of its motion on August 5, 2016.

Beginning on March 16, 2016, the parties engaged in a substantial production and review of documents.  Lead Plaintiff produced over 600 documents in response to Defendants' document requests.  Defendants produced over 30,000 documents in response to Lead Plaintiff's document requests.  Separately, Lead Plaintiff served subpoenas on four non-parties, who collectively produced over 7,000 additional pages of documents.  Defendants also served subpoenas on three of Lead Plaintiff's non-party investment managers who collectively produced over 1,400 additional documents.

The parties also took extensive deposition testimony in this litigation.  In connection with Lead Plaintiff's motion for class certification, Defendants deposed Lead Plaintiff, three of its investment managers, and Lead Plaintiff's market efficiency expert.  Lead Plaintiff also deposed Defendants' market efficiency expert.  Additionally, Lead Plaintiff noticed 12 depositions in

connection with merits discovery and began efforts to notice depositions of two witnesses located in Germany.  Defendants noticed the depositions of two confidential witnesses cited in the Complaint.

 On August 17, 2016, the parties entered into an amended scheduling order which, among other things, requested that the Court postpone ruling on Lead Plaintiff's motion for class certification until after November 1, 2016, to enable the parties to explore a potential resolution of the Action.

## III.   SETTLEMENT NEGOTIATIONS

On September 16, 2016, Lead Plaintiff, Defendants, and certain of Defendants' insurance carriers ("D&O Insurers") participated in a full-day mediation session with the Honorable Daniel Weinstein (Ret.) of Judicial Arbitration and Mediation Services ("JAMS"). Although a resolution was not reached during the mediation session, the parties continued to engage in arms-length negotiations through Judge Weinstein during the weeks following the mediation. On November 17, 2016, Judge Weinstein made a mediator's proposal to settle the case for $28,250,000. On November 18, 2016, Lead Plaintiff, Defendants, and the D&O Insurers accepted the mediator's proposal and agreed, subject to further negotiation of the specific terms of the Stipulation and Court approval, to settle the case for that amount. On April 19, 2017, the Parties executed the Stipulation.

## IV.   ARGUMENT

### 1.   The Proposed Settlement Warrants Preliminary Approval

Approval of a proposed settlement is within the Court's discretion, to be exercised in accordance with public policy that strongly favors pretrial settlement of complex class action lawsuits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action

context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotations omitted). Under Fed. R. Civ. P. 23(e), a class action settlement must be found by the Court to be "fair, reasonable, and adequate," generally through a two-step approval process, entailing preliminary approval and then final approval. *See, e.g.*, *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, 266 F. Supp. 2d 44 (D.D.C. 2003) (contemplating two-step approval process); *Newberg on Class Actions* § 11.25 ("Courts preliminarily review proposed settlements for evidence of obvious deficiencies, any unfairness, and to determine whether it falls within a range of reasonableness before directing notice to the class and scheduling a fairness hearing, after which final approval may be granted after parties have had an opportunity to object and further brief the court on relevant issues.")

At the first step, a court considers whether the settlement falls within the range of an acceptable settlement and warrants preliminary approval, such that notice of the settlement should be sent to the proposed class and a fairness hearing held. In the second step, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness and adequacy of the proposed settlement, the Court considers whether the settlement warrants "final approval." *See, e.g.*, *Thomas v. Christopher*, 169 F.R.D. 224, 230 (D.D.C. 1996), *rev'd in part on other grounds sub nom. Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998) (following "the two-step procedure suggested in the *Manual for Complex Litigation*" by first "determin[ing] whether the proposed agreement was within the range of an acceptable settlement" and then conducting a fairness hearing after notice had been disseminated to the class).

"Generally, preliminary approval of a class action settlement will be granted if it appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its fairness

or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys.'" *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (citing *Newberg on Class Actions*, § 11:25 (4th ed. 2010) and *In re Vitamins Antitrust Litig.*, No. 99–197(TFH), 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999). Additionally, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 104 (D.D.C. 2004) (citing *Manual for Complex Litig.*, at § 30.42).

### A.   The Proposed Settlement Is the Result of Non-Collusive, Arms'-Length Negotiations and Is Entitled to a Presumption of Fairness, Reasonableness, and Adequacy

The proposed Settlement should be considered presumptively fair, reasonable, and adequate because it was the result of an arms'-length negotiation between experienced, capable counsel, presided over by Judge Weinstein, after meaningful discovery had been taken.

Lead Counsel Cohen Milstein is a highly respected plaintiffs' class action firm, has prosecuted this Action from its inception, and is deeply familiar with the strengths and weaknesses of the claims and defenses. Indeed, after the case was initially dismissed, Lead Counsel filed a narrow appeal to the D.C. Circuit on a subset of the claims on behalf of Lead Plaintiff. This appeal was successful, although the resulting case was substantially narrower than at the case's inception. More importantly, the eventual remand allowed for substantial discovery on the remaining claims, which permitted Lead Counsel to gauge the case's strengths and weaknesses.

As document discovery neared completion, and while a hard-fought class certification motion was pending, the parties agreed to mediation. Lead Counsel negotiated with counsel for Defendants, Jones Day, a premier international defense firm.

These negotiations were at arms'-length and were facilitated through mediation before a highly-experienced and well-regarded mediator, the Honorable Daniel Weinstein (Ret.). Specifically, the parties participated in an all-day mediation session on September 16, 2016 in New York City. Prior to this mediation session, the parties prepared comprehensive mediation statements accompanied by more than 80 exhibits consisting of evidence produced during discovery. The parties did not reach agreement that day, but continued to negotiate, through Judge Weinstein, over email and telephone. On November 17, 2016, Judge Weinstein ultimately made the proposal that this Action be settled for $28,250,000, which both sides accepted the next day.

As the foregoing demonstrates, there is no basis to believe that the Settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties." *Thomas*, 169 F.R.D. at 240. Under these circumstances, the Settlement is entitled to a presumption that it is fair, reasonable, and adequate.

> **B.    There Are No Grounds to Doubt the Fairness of the Settlement and the Settlement Has No Obvious Deficiencies, Such As Unduly Preferential Treatment of Class Representatives or Excessive Compensation for Attorneys**

There are also no "grounds to doubt [the Stipulation's] fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Trombley*, 759 F. Supp. 2d at 23. Lead Plaintiff, like all other Class Members, will receive its *pro rata* distribution from the Net Settlement Fund in accordance with a proposed Plan of Allocation that has been prepared with the assistance of a damages expert retained by Lead Counsel.

As for the Plan of Allocation, it provides a reasonable, rational basis for Class Members to recover their *pro rata* damages based upon the dates of their Harman stock transactions. The

proposed Plan of Allocation is also fair and reasonable because, for Class Members who purchased their shares during the Class Period but sold or continued to hold their shares after the Class Period, the Plan of Allocation calculates damages based on the methodology set forth in the PSLRA. *See* 15 U.S.C. § 78u-4(e) (providing methodology for limiting damages). The proposed Plan of Allocation is fair and reasonable, and should be preliminarily approved. *See, e.g.*, *Danieli v. IBM Corp.*, No. 08 CV 3688(SHS), 2009 WL 6583144, at *5 (S.D.N.Y. Nov. 16, 2009) (approving plan of allocation where it "is rationally related to the relative strengths and weaknesses of the respective claims asserted" and falls within the range of possible approval).

As for the matter of attorneys' fees and reimbursement of expenses, that will be subject to the Court's oversight and approval.

Thus, there is no reason to doubt the fairness of the Settlement, and the Settlement has no obvious deficiencies.

### C.     The Proposed Settlement Is Within the Range of Possible Approval

Although Lead Plaintiff believes that the claims asserted are meritorious, continued litigation posed significant risks that made a meaningful recovery for the Class uncertain. Indeed, to obtain *any* recovery, Lead Plaintiff would have had to prevail on the pending class-certification motion, take and defend dozens of depositions, engage in expert merits discovery, survive inevitable summary judgment and *Daubert* challenges, prevail at trial, and survive appeals. Moreover, the maximum upside to the case was reduced after the case was narrowed as a result of the Court's dismissal of the initial claims. And, as Defendants' class-certification briefing suggested, there would likely be significant loss causation arguments that Lead Plaintiff needed to overcome as the case progressed.

Against these risks, Lead Counsel considered the benefit to the Class of securing a $28,250,000 cash settlement immediately. Lead Counsel considered that, according to the estimates

of a damages expert retained by Lead Counsel, $28,250,000 constitutes approximately 9% of the realistically recoverable damages available in this case.[4]

Lead Plaintiff and Lead Counsel submit that, weighed against these challenges and uncertainties, and considering the maximum possible recovery, the immediate $28,250,000 cash recovery for the Class is well within the range of possible approval. *See, e.g.*, *In re Newbridge Networks Sec. Litig.*, No. CIV. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("Courts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; but an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness.") (emphasis in original).

### 2.     The Form and Manner of Notice to the Class Should Be Approved

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound" by the Settlement. Here, the Settling Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Class and whose names and addresses can be identified with reasonable effort. In addition, the Claims Administrator will send the Notice to nominee owners, such as brokerage firms, that commonly hold securities in "street name" for the benefit of their customers, who are the beneficial purchasers of the securities. The Settling Parties further propose to supplement that mailed Notice with a Summary Notice to be published once in *Investor's Business Daily* and on *PR Newswire*, or as otherwise ordered by the Court. The Notice

---

[4] Based on an estimate performed by Lead Plaintiff's damages consultant that adjusts for, among other things, the estimated impact of the PSLRA's limitation on damages, set forth at 15 U.S.C. § 78u-4(e)(1)-(3).

and Summary Notice are attached to the Stipulation as Exhibits A-1 and A-2.

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for attorneys' fees of no more than 25% of the Settlement Fund, after costs and expenses, and expenses of no more than $500,000 plus the costs of settlement administration, plus interest on those amounts. *See* Stipulation at Exhibit A-1. This proposed fee amount is well within the range of reasonable attorneys' fees awarded for similar complex class action matters in the District of Columbia Circuit as well as other federal district courts. *See, e.g.*, *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) (approving fee award of 20% of recovery, noting that "a majority of common fund class action fee awards fall between twenty and thirty percent"); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 205-06 (D.D.C. 2011) (approving 22-25% of recovery, and citing cases with range of 20-33%); *Bebchick v. Washington Metro Area Transit Comm'n*, 805 F.2d 396 (D.C. Cir. 1986) (approving fee award of 25% of recovery).

Furthermore, in securities class actions, the PSLRA requires the notice of settlement to include: (1) "[t]he amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis"; (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree"; (3) "a statement indicating which parties or counsel intend to make . . . an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average

13

per share basis), and a brief explanation supporting the fees and costs sought"; (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members"; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement."

The proposed Notice describes the Settlement and sets forth the aggregate amount of the Settlement Fund ($28,250,000) and the estimated average per share recovery; states the Settling Parties' disagreement over liability and damages; sets out the amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval; and describes the Plan of Allocation. In addition, the Notice explains the nature, history and status of the Action; sets forth the definition of the Class, describes the Class's claims and the classwide issues, discusses the rights of persons who fall within the definition of the Class, and summarizes the reasons the Settling Parties are proposing the Settlement.

Further, for those Class Members who wish to participate in the Settlement, the Notice and the Proof of Claim provide instruction on the process for completing and submitting the Proof of Claim. The Notice also provides the name and mailing address for the Claims Administrator, Lead Counsel, and Defendants' Counsel. The Summary Notice also informs Class Members that copies of the Notice and Proof of Claim may be obtained by writing the Claims Administrator, or by accessing the documents on the website of the Claims Administrator. Finally, the Notice sets forth the date, time and place of the Final Approval Hearing, along with the procedures for objecting to or seeking exclusion from the Settlement.

Accordingly, the Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. The manner of providing notice,

14

which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g.*, *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 29 (D.D.C. 2011), *as amended* (Nov. 10, 2011) (approving similar notice program).

## V.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

It is well-established that a class may be certified for settlement purposes only. *See, e.g.*, *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 13 (D.D.C. 2015) (citing *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 50 (D.D.C. 2010)). "Plaintiffs bear the burden of convincing the court that the requirements of Federal Rule of Civil Procedure 23 are satisfied, except that 'a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal [in the settlement-only certification context] is that there be no trial.'" *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 14 (D.D.C. 2015) (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (citation omitted)).

As discussed at length in connection with the briefing on Lead Plaintiff's motion for class certification, all the elements of Rule 23 are met, and Lead Plaintiff incorporates those arguments by reference. A summary of those arguments is set forth here.

### 1.    The Settlement Class Meets All the Requirements of Rule 23(a)

***Numerosity.*** During the Class Period, Harman had an average of more than 65 million shares outstanding, *see* Report of Professor Stephen E. Christophe, Ph.D. ("Christophe Report") (ECF No. 75-3), attached as Exhibit 1 to the Declaration of Steven J. Toll, dated April 1, 2016, 15 n. 8. This satisfies numerosity. *See, e.g.*, *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 275 (S.D.N.Y. 2008).

***Commonality.*** This is satisfied here because common questions include whether

Defendants made material misrepresentations or omissions with scienter. *See, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (requirement met "if plaintiffs' grievances share a common question of law or of fact").

*Typicality.* This is satisfied here because each Settlement Class Member's claims arise from the same "course of events," namely Defendants' misstatements and omissions, and each Class Member will make "similar legal arguments to prove the defendant's liability." *See Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 207 (S.D.N.Y. 2012) (footnotes and quotation omitted).

*Adequacy.* Adequacy is met because Lead Plaintiff "possess[es] the same interest and suffer[ed] the same injury as the Class Members," *Amchem*, 521 U.S. at 594-95, and suffers no non-speculative, disabling "fundamental" conflicts. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001) (citation omitted). Defendants' depositions of Lead Plaintiff uncovered no evidence to suggest otherwise. Indeed, Lead Plaintiff has vindicated Class Members' interests by engaging and overseeing the work of experienced class counsel, Cohen Milstein, and participating in discovery.

### 2.    The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to Class Members predominate over any questions affecting only individual members" ("predominance"), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). Fed. R. Civ. P. 23(b)(3); *see also Amchem*, 521 U.S. at 623.

*Predominance.* Predominance is "readily met in certain cases alleging … securities fraud." *Amchem*, 521 U.S. at 625. It is satisfied if the resolution of class claims and issues "can be achieved through generalized proof, and if these particular issues are more substantial than the

16

issues subject only to individualized proof." *UFCW Local 1776 v. Eli Lilly and Co.*, 620 F.3d 121, 131 (2d Cir. 2010). Here, common questions of law and fact predominate because the proof for the claims of misrepresentation, materiality, reliance, and scienter, is all based on a common nucleus of evidence. Further, reliance is also subject to common proof under the presumption of reliance and the "fraud on the market" theory adopted in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014) (*Halliburton II*), if Lead Plaintiff shows the market is efficient. *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013).

Here, Lead Plaintiff has previously submitted substantial evidence of an efficient market, and Lead Plaintiff respectfully refers the Court to Lead Plaintiff's opening class-certification brief, ECF No. 75-1, and the accompanying Christophe Report, ECF No. 75-3, for a full discussion of that evidence. In short, Lead Plaintiff demonstrated the existence of an efficient market for Harman common stock during the Class Period by showing that the factors enumerated in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) (the "*Cammer* factors"), were met:

- a cause and effect relationship between unexpected Harman-specific events and Harman stock prices, *see* Christophe Report, ¶¶ 30-71;

- a large average weekly trading volume of approximately 5 million shares, *see id.*, ¶ 23;

- the fact that Harman was eligible to file Form S-3 registration statements, reflecting the SEC's belief that the market for Harman operates efficiently, *see id.*, ¶ 29;

- the existence of a market maker in the form of the NYSE's Designated Specialist,

17

*see id.*, ¶ 28; and

- the fact that at least 10 different securities analyst firms followed Harman stock throughout the Class Period, *see id.*, ¶¶ 24-27.

*See Cammer*, 711 F. Supp. at 1286-87 (describing each of the above factors as "giv[ing] rise to an inference that [a company] traded in an efficient market"). Because the market for Harman securities displayed the characteristics of an efficient market, Lead Plaintiff is entitled to the fraud-on-the-market presumption, and accordingly, common questions regarding reliance predominate. Further, Lead Plaintiff has demonstrated that damages also can be calculated using common proof. *See* Christophe Report, ¶¶ 77-81. Therefore, the predominance criteria are satisfied.[5]

*Superiority.* Federal courts routinely conclude "that securities class actions are presumed to be superior to individual suits." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 142 (S.D.N.Y. 2014). That presumption applies here, and, in any event, the superiority factors are clearly met. Those are:

> (A) the class members' interests in individually controlling the prosecution … of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability … of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). This is a prototypical securities class action, with at least thousands of Class Members, and there is no reason to believe the presumption of superiority should not apply here. Accordingly, a class action is the superior method of adjudicating this Action.

---

[5] Defendants' opposition to class certification did not challenge the existence of an efficient market, but did dispute predominance for two reasons: (1) an alleged lack of "price impact," and (2) an allegedly deficient damages model. As Lead Plaintiff demonstrated in its reply, which was filed under seal on August 5, 2016, these arguments were without merit. In all events, the Court need not consider these arguments at this juncture, as this motion is unopposed.

Thus, the Class satisfies each of the requirements of Rule 23(a) and (b), and should be certified for purposes of the proposed Settlement.

## VI.    PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule for the Settlement-related events in this case.

| Event | Proposed Date/Deadline |
|---|---|
| Begin Mailing Long Form Notice to Class Members | No later than 21 days after Preliminary Approval Order is entered ("Notice Date"). |
| Posting of the Settlement, the Long Form Notice, the Summary Notice, and the Proof of Claim Form to a website dedicated to the administration of the Settlement | On or before the Notice Date. |
| Publish Summary Notice in *Investor's Business Daily* and on *PR Newswire* | No later than 14 days after the Notice Date. |
| Deadline to File Motion for Final Approval of Settlement and for Reimbursement of Litigation Expenses | No later than 35 days before Final Approval Hearing. |
| Deadline for Receipt of Requests for Exclusion from Settlement | No later than 30 days before Final Approval Hearing. |
| Deadline to File and Serve Objections to Final Approval and Reimbursement of Litigation Expenses | No later than 30 days before Final Approval Hearing. |
| Reply to Objections, if any | No later than 7 days before Final Approval Hearing. |
| Deadline to File Papers in Further Support of Final Approval of Settlement and for Reimbursement of Litigation Expenses | No later than 7 days before Final Approval Hearing. |
| Final Settlement Approval Hearing | During the first two weeks of August 2017, subject to the Court's availability. |
| Deadline for the Submission of Proof of Claim Forms | No later than 120 days after Preliminary Approval Order is entered. |

## VII.    CONCLUSION

Lead Plaintiff respectfully requests that the Court (i) preliminarily approve the Settlement; (ii) preliminarily certify the Class for the purposes of the Settlement; (iii) approve the proposed form and manner of notice to Class Members; and (iv) schedule a hearing on Lead Plaintiff's motion for final approval of the Settlement and Lead Counsel's motion for an award

of attorneys' fees and reimbursement of litigation expenses during the first two weeks of August 2017, subject to the Court's availability. A proposed Preliminary Approval Order is being submitted herewith as Exhibit A to the Stipulation.

Dated: April 19, 2017                     Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Steven J. Toll*
Steven J. Toll (D.C. Bar No. 225623)
Daniel S. Sommers (D.C. Bar No. 416549)
S. Douglas Bunch (D.C. Bar No. 974054)
Times Wang (D.C. Bar No. 1025389)
1100 New York Avenue, N.W.
Suite 500, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

***Lead Counsel for Lead Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2017, I caused the foregoing document to be served on all counsel of record by filing using the Court's ECF system.

*/s/ Times Wang*
Times Wang